UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY J. HERGERT, | : | **CIVIL NO. 3:09-CV-1388** |
| Plaintiff | : | (Judge Nealon) |
| v. | : | (Magistrate Judge Smyser) |
| JOE NOVAK and CHRIS MACHECIK, | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

### **I. PROCEDURAL HISTORY**

On July 17, 2009, the plaintiff commenced the instant civil rights action by filing a complaint. (Doc. 1). This is a 42 U.S.C. § 1983 civil action. The plaintiff filed an application to proceed *in forma pauperis* and it was granted by this court. (Docs. 2 and 6).

On October 9, 2009, the defendants filed an answer with affirmative defenses to the plaintiff's complaint. (Doc. 12).

On October 14, 2009, the plaintiff filed a request for entry of default and an affidavit in support thereof. (Docs. 13 and 14). On October 20, 2009, the defendants filed a brief in opposition to said request. (Doc. 16). On October 28, 2009, this court denied the plaintiff's request for entry of default. (Doc. 20).

Discovery was completed on May 31, 2010. (*See* Doc. 27). On June 18, 2010, the defendants filed a motion for summary judgment and a statement of material facts. (Docs. 30 and 31). On June 28, 2010, the defendants filed a brief in support of the motion for summary judgment. (Doc. 34). On July 2, 2010, the plaintiff filed a brief in opposition of the motion for summary judgment. (Doc. 35).

**II. STATEMENT OF FACTS**

The allegations in the plaintiff's complaint stem from his arrest which occurred on September 9, 2007. The plaintiff alleges that the defendants, who are police officers for the City of Wilkes-Barre Police Department, used excessive force against him in the process of a warrantless arrest.

2

The defendants have filed a LR 56.1 statement of undisputed facts (Doc. 31), the deposition testimony of the plaintiff (Doc. 31, Exhibit A), the criminal court docket in the case of the charges brought against the plaintiff after the arrest (Doc. 31, Exhibit B), the affidavit of defendant Novak (Doc. 31, Exhibit C), the affidavit of defendant Maciejczyk (Doc. 31, Exhibit D), and other evidentiary documents. The plaintiff has not filed a LR 56.1 statement or evidentiary materials.

The undisputed facts for purposes of this summary judgment motion are[1]:

> 1. The plaintiff, Jeffrey Hergert ("Hergert"), is an adult individual whose last known addresses are 99 Water Street, Wilkes-Barre, Pennsylvania 18702 and 25 Myrtle Street, Hanover Township, Pennsylvania 18706.
>
> 2. Hergert is a repeat criminal offender who has been convicted and/or arrested on numerous occasions in the states of Pennsylvania, Nevada, South Carolina, Arizona, Utah, and Washington for offenses such as aggravated assault, false imprisonment, attempted indecent assault,

---

1. These are the undisputed facts by application of LR 56.1, given that the plaintiff did not file a LR 56.1 statement. Also, since there is no opposing statement of the facts not in dispute, the evidentiary source citations supplied in the defendants' LR 56.1 statement are omitted in this Report and Recommendation.

3

stalking, and harassment and/or disorderly conduct.

3. The defendants, Officer Novak and Officer Maciejczyk, are members of the City of Wilkes-Barre Police Department.

4. On September 9, 2007, Officer Novak and Officer Maciejczyk were on duty as Wilkes-Barre City Police Officers.

5. On September 9, 2007, Officer Maciejczyk was on patrol in the area of 260 South Washington Street, Wilkes-Barre, Pennsylvania.

6. An adult female approached Officer Maciejczyk's vehicle and stated she needed help and advised him that a suspicious white male had approached her inside of St. Nicholas's Church.

7. She stated to the officer that the suspicious white male had asked her where the men's room was located, but had then stated he did not need the facility.

8. The female indicated that, as the suspicious white male was speaking to her, she thought that he fit the description of a male subject who had approached her daughter four times in the past five months.

9. The female's daughter had told her mother that the white male had stated that he was looking for models and had asked her to come to his mini-van to see the photos.

10. The female's daughter had reported the incident and that the male was driving a silver mini-van with an Idaho registration plates.

4

11. The female told her husband to look for a silver mini-van with an Idaho license plate in the church parking lot and they in fact found the silver Mercury min-van with Idaho registration 1476J in the church parking lot facing south.

12. The female stated that the white male saw her watching him and he then quickly entered his vehicle and began to leave.

13. The female observed Officer Maciejczyk's cruiser and advised him that a suspicious white male approached her and that he was leaving the parking lot driving a silver mini-van.

14. Officer Maciejczyk subsequently observed the suspect vehicle quickly leaving the lot and head south towards Ross Street.

15. Officer Maciejczyk activated his lights and siren in an attempt to reach the vehicle.

16. The driver then failed to stop for a solid red traffic signal at the intersection of South Main and South Streets and continued north until making a right into the parking lot of Marquis Art and Frame.

17. The driver proceeded to pull to the rear of the empty lot and parked his vehicle behind a building out of view from the entrance at South Main Street.

18. Officer Maciejczyk pulled along the left side doors and approached the vehicle.

19. The driver identified himself as Jeffrey Hergert.

5

20. Mr. Hergert further identified himself as the owner of the silver minivan, and provided an Arizona license B14001923 as identification.

21. A National Crime Information Check ("NCIC") check was made on Hergert and Sergeant Joseph Novak ("Officer Novak") arrived on the scene to provide back-up.

22. Upon his arrival at the scene, Officer Novak observed a silver minivan bearing an Idaho registration plate and with Hergert seated in the driver's seat.

23. After speaking with Officer Maciejczyk, Officer Novak went to the area of 260 South Washington Street to speak with the complainant, Janine Knouse, who stated the suspect had approached her daughter on several occasions in Wilkes-Barre Township for which reports were filed with the Wilkes-Barre Township Police Department.

24. The complainant told Officer Novak that she was fearful that Hergert was stalking her daughter and/or others in her family.

25. Officer Novak returned to the area where Officer Maciejczyk had Mr. Hergert stopped and discussed the incident with Officer Maciejczyk.

26. While waiting for the background check of Hergert to be completed, Officer Maciejczyk and Officer Novak observed him moving around in the driver's compartment acting very nervous and he turned around several times watching their movements.

27. For officer safety, Hergert was taken out of the vehicle and given a pat down search of his person.

28. Officer Maciejczyk then advised Hergert that he was under arrest for attempting to flee and for eluding his marked police vehicle.

29. Hergert pulled back and took a defensive posture, stating he had done nothing wrong.

30. During his deposition, Hergert testified as follows:

> And when they had told me to put my hands behind my back, you know, I quickly turned around, and I asked "what's this all about?"
>
> And that's when they had used force to get me to the ground, which at that point, the justifiable forces could have been justified, simply because I didn't comply with the regulations, although they did say, you know, you're under arrest.

31. Hergert further testified that:

> . . . They had used – they – like I said, at this point, they did get me to the ground. And I would say, at this point, there was probably justifiable force by them being able to – you know, for them to detain me. And I'm not questioning that.

32. Officer Maciejczyk ordered Hergert to place his hands behind his back, which he refused to do and stated "I did nothing wrong!"

33. Hergert then began to struggle with Officer Maciejczyk and Officer Novak and refused their commands to "Stop Resisting!"

7

34. Hergert was taken to the ground and continued to kick, punch and spit at Officer Maciejczyk and Officer Novak.

35. When he was taken to the ground during the scuffle, Hergert rolled to his back and drew his knees to his chest and attempted to push Officer Maciejczyk and Officer Novak away with his legs by kicking at the Officers.

36. Hergert was eventually rolled to his stomach and his right arm was brought behind his back; however, he continued to swing his left arm, kick and spit at Officer Novak and Officer Maciejczyk, while the Officers were repeatedly ordering Hergert to stop resisting and to place his arms behind his back.

37. Hergert also resisted arrested by turning to his right side and drew his knees to his chest attempting to prevent Officer Novak and Officer Maciejczyk from keeping him face down and allowing Officer Maciejczyk to effect the arrest.

38. Officer Maciejczyk ordered Hergert to stop resisting numerous times, but he refused to comply.

39. After repeated attempts to use physical manipulation and hand strikes to force Hergert to comply, Officer Maciejczyk warned Hergert repeatedly that pepper spray would be used.

40. Left with no other choice and fearing for his safety, Officer Maciejczyk then sprayed Hergert with pepper spray, but he continued to resist. Hergert admitted in his deposition that he was sprayed with pepper spray, not mace.

41. Officer Maciejczyk and Officer Novak then requested additional officers to respond and assist them.

42. Hergert was eventually handcuffed after a prolonged struggle and taken into custody.

43. Even while he was in custody and handcuffed, Hergert continued to attempt to get off the ground and kick at and spit at Officer Maciejczyk and Officer Novak.

44. As he was thrashing about on the ground, Hergert struck his face on the pavement.

45. A Medic unit responded and flushed Hergert's eyes of the pepper spray with sterile water.

46. No further medical treatment was necessary on scene or performed by the Medic.

47. Hergert was placed in the prisoner transport van and taken to Wilkes-Barre Police Headquarters for processing incident to his arrest and then charged.

48. Following his arrest and processing, Hergert was taken to the Luzerne County Correctional Facility ("LCCF") and given a medical examination. Hergert admitted in his deposition that the only injuries he suffered were bruises to his face and ribs.

49. The radiology report from the x-rays ordered by LCCF's medical doctor, Dr. Gunnar Kosek, as well as LCCF's Physical Examination Report and Dr. Kosek's Progress Notes, indicates that there was no evidence that Hergert had broken ribs.

50. Hergert testified that he did not receive any antibiotics for his alleged injuries.

> 51. Hergert was never taken to the hospital for any alleged injuries.
>
> 52. Officer Maciejczyk charged Hergert with two counts of Aggravated Assault (18 Pa. C.S. § 2702), one count of Fleeing or Attempting to Elude an Officer (18 Pa. C.S. § 3733), two counts of Resisting Arrest (18 Pa. C.S. § 5104), one count of Failure to Stop at a Red Signal (75 Pa. C.S. § 3112), and two counts of Simple Assault (18 Pa. C.S. § 2701).
>
> 53. Hergert pled guilty to two counts of Aggravated Assault (18 Pa. C.S. § 2702), one with regard to Officer Maciejczyk and one with respect to Officer Novak, and the remaining counts were either withdrawn or Nolle Prossed as part of his decision to plead guilty.
>
> 54. Hergert was sentenced to a minimum of fifteen months and a maximum of thirty months.

## III. STATEMENT OF ISSUES

The plaintiff alleges in his complaint that the defendants violated his civil rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution when they engaged in excessive force against him during his arrest on September 9, 2007. (Doc. 1).

The defendants argue that they are entitled to summary judgment because there are no genuine issues of material fact in

dispute and because given the undisputed facts they are entitled to judgment as a matter of law. In advancing their argument, they argue that a claim upon which relief can be granted is not presented as to the plaintiff's claims of an Eighth Amendment violation or of a Fourteenth Amendment violation. They argue that summary judgment in their favor should be granted because under the undisputed facts they used only the amount of force necessary to take the plaintiff into custody.

**IV. DISCUSSION**

*A. Summary Judgment Standard*

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving

11

party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248.  A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational

12

trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgment "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

Local Rule 56.1, Rules of Court, M.D. Pa., provides:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.
> Statements of material facts in support of, or in opposition to, a motion shall include

14

>           references to the parts of the record that
>           support the statements.
>                All material facts set forth in the
>           statement required to be served by the moving
>           party will be deemed to be admitted unless
>           controverted by the statement required to be
>           served by the opposing party.

As noted above, here the defendants' LR 56.1 statement is deemed to state the undisputed facts because the plaintiff filed no LR 56.1 statement.

  *B. The plaintiff's Eighth Amendment Claim.*

The plaintiff alleges that the defendants engaged in excessive force during his arrest in violation of the Eighth Amendment. Although the Eighth Amendment serves as the primary source of protection against excessive force for claims that arise after conviction, *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989), the plaintiff's claims are not appropriately viewed as Eighth Amendment claims because they arise out of force used during his arrest. The plaintiff's claims should be analyzed under the Fourth Amendment, and not the Eighth Amendment. *See Lora-Pena v. F.B.I.,* 529 F.3d 503, 505 (3d Cir. 2008).

*C. The plaintiff's Fourteenth Amendment Claim.*

The plaintiff asserts a claim of excessive force pursuant to the Fourth and Fourteenth Amendments. However, claims of excessive force in the course of an arrest are properly analyzed under the Fourth Amendment and not under a Fourteenth Amendment due process analysis. *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Graham*, *supra,* 490 U.S. at 393-394). When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizure' of the person." *Graham*, *supra.,* 490 U.S. at 394.

*D. Under the undisputed facts the defendants did not use more force than was necessary.*

The defendants argue that "summary judgment on the plaintiff's excessive force claim is warranted because he pled guilty to two counts of Aggravated Assault, and therefore, is estopped from claiming excessive force arising out of the arrest." (Doc. 34 at 17).

16

The Supreme Court held in *Heck v. Humphrey,* 512 U.S. 477 (1994), that a plaintiff may not maintain a § 1983 action for damages if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. The Court held that regardless of the relief sought or the target of the prisoner's suit, a state prisoner's § 1983 action is barred if it would necessarily demonstrate the invalidity of confinement or its duration. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82, (2005). *See also*, *Hill v. McDonough*, 574 U.S. 73 (2006); *Muhammad v. Close*, 540 U.S. 749 (2004).

Any claim of the plaintiff which would impugn the validity of his guilty plea to two counts of Aggravated Assault would be barred by *Heck*.

Arguably in the present case a determination that the defendants used excessive force in arresting the plaintiff would not invalidate the plaintiff's convictions for aggravated

17

assault.  But under the undisputed facts, the defendants did not use excessive force while they were arresting the plaintiff.

The standard governing excessive force claims in the course of an arrest, investigatory stop or other type of seizure, is specified by the United States Supreme Court in *Graham*, *supra.,* 490 U.S. at 384.  Pursuant to *Graham*, excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard.  Thus, the plaintiff's excessive force claims must be considered under the Fourth Amendment's reasonableness standard.

"A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable."  *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002); *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004).  A seizure of the plaintiff occurs "[w]henever an officer restrains the freedom of [the plaintiff] to walk away."  *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

18

The Third Circuit in *Rivas, supra.*, 365 F.3d at 198 stated:

> An excessive force claim must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody the allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are often tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97, 109 S. Ct. 1865. The inquiry turns on "objective reasonableness," meaning that the standard is whether the police officer's "actions [were] 'objectively reasonable' in light of the facts and circumstances" facing the officer, regardless of the officer's intent or motivation. *Id.* at 397, 109 S. Ct. 1865.

There is not a basis in the summary judgment evidence and undisputed facts for a finding that the defendants engaged in a use of force that was not objectively reasonable. The defendants had cause to make an investigative stop of the plaintiff and, as events then unfolded, they had probable cause to arrest the plaintiff for eluding the police and for driving through a red light in doing so. The amount of force they used in making the arrest was reasonable.

19

E.  *Qualified Immunity.*

It is not necessary to reach the defendants' qualified immunity argument since they are entitled to summary judgment under the undisputed facts.

F.  *Malicious Prosecution.*

The plaintiff does not state a claim of malicious prosecution upon which relief can be granted. He pleaded guilty to the charges against him. (Doc. 31, Exhibits B and G).

## V. RECOMMENDATION

It is recommended that the defendants' motion (Doc. 30) for summary judgment be granted.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: October 15, 2010.